UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|                                                           |                      |
| --------------------------------------------------------- | -------------------- |
| National Union Fire Insurance Company of Pittsburgh, Pa., *et al.*, | 1:18-MC-1793 (ARR)   |
|                                                           |                      |
| against                                                   | **Not for Publication** |
|                                                           |                      |
| Danielle Razzouk, *et al.*                                | **Opinion & Order**  |

ROSS, United States District Judge:

This ancillary proceeding arises out of a criminal-forfeiture order that was agreed to by the defendant Sassine Razzouk seven years ago and made public five years ago. Also five years ago, the third-party petitioner National Union Fire Insurance Company of Pittsburgh, Pa., timely notified this court of its interest in the forfeited property. And this year, the government and the petitioner finally appear to have reached an agreement. But now, at the eleventh hour, the defendant's daughters have emerged to assert their own interest in the property.

They are far too late. To the extent that I have discretion to allow their untimely intervention, I decline to do so.

## BACKGROUND

I assume the parties' familiarity with the factual backdrop of this proceeding and the related criminal prosecution, and will not reiterate every detail, save what is relevant here.

This ancillary proceeding traces its history to a consent order, issued under seal on June 10, 2011, entering a forfeiture money judgment of $6,515,809 against one Sassine Razzouk, father of the prospective intervenors here, Danielle Razzouk and Monique Razzouk. *See* Consent Preliminary Order of Forfeiture at 1, 7, *United States v. Razzouk*, No. 11-CR-430 (E.D.N.Y. June 10, 2011), ECF No. 27. In partial satisfaction of that judgment,

1

Sassine Razzouk, the defendant in that case, agreed to forfeit funds held in four financial accounts, with a total value of approximately $3,023,624. *Id.* at 2–3.

The forfeiture order was unsealed and placed on the docket on May 6, 2013. *See id.* at 1. Notice of the forfeiture of the four financial accounts was then published online, from May 8 until June 6, 2013, on the government's forfeiture website, Forfeiture.gov. *See* Decl. of Publication, *Razzouk*, No. 11-CR-430 (June 7, 2013), ECF No. 28. And on June 7, 2013, third-party petitioner National Union Fire Insurance Company of Pittsburgh, Pa., filed a petition for an ancillary hearing, asserting a legal right to the $6,515,809 forfeited by the defendant. Pet. for Ancillary Hr'g 11–12, ECF No. 1.[1] This proceeding was then stayed pending Sassine Razzouk's sentencing. Stip. and Order 2, ECF No. 5.

Five years passed.[2]

In 2018, Sassine Razzouk was sentenced, and this proceeding was revived. On June 28, 2018, the government submitted a letter to this court stating that it anticipated that $5,652,661 of the defendant's forfeited funds would be remitted to National Union and that the government and National Union would thus be able to settle the matter without further litigation. Kedeshian Letter 1, ECF No. 11. But the following day, this court received an unexpected letter from Sassine Razzouk's daughters, asserting their own legal right to "approximately" two million dollars of the forfeited funds and requesting permission to intervene in these proceedings. Kestenbaum Letter 2, ECF No. 13. The government, construing the letter as a petition for an ancillary hearing, moved to dismiss the "Petition" from the case, arguing, in part, that it was time-barred. Notice of Mot., ECF No. 16.

---

[1] National Union asserts its rights as subrogee and assignee of Consolidated Edison Company of New York, Inc., the entity that Sassine Razzouk was convicted of defrauding, which National Union had reimbursed for its losses. *See id.* at 1–2.

[2] The underlying criminal case (along with this ancillary proceeding) was reassigned to me on November 16, 2015.

2

I held a conference with the parties on August 8 and requested that the Razzouk daughters explain why I should allow their untimely intervention. On August 13, they moved to intervene, arguing that the limitations period should be extended due to excusable neglect. Razzouk Mot., ECF No. 20. National Union submitted a letter expressing its contrary views the same day (Schmookler Letter, ECF No. 21), and the government submitted a letter opposing the prospective intervenors' motion on August 16 (Gov't Opp'n, ECF No. 23).

## DISCUSSION

When a "court orders the forfeiture of specific property, the government must publish notice of the order and send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture." Fed. R. Crim. P. 32.2(b)(6)(A); *see also* 21 U.S.C. § 853(n)(1) (requiring publication of order). A third party "asserting a legal interest in [the] property . . . may, within thirty days of the final publication of notice or his receipt of notice . . . , whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property." § 853(n)(2). "Following the court's disposition of all petitions filed . . . , or if no such petitions are filed following the expiration of the [thirty-day] period . . . , the United States shall have clear title to [the] property . . . ." § 853(n)(7).

In this case, the relevant forfeiture order was published online from May 8 to June 6, 2013. Decl. of Publication, *supra*. Under the statute, then, any interested third parties had until July 6, 2013, to file their own petitions with the court. *See* § 853(n)(2). National Union timely filed its petition on June 7, 2013.[3] Any petition filed in 2018 would clearly be several years too late. *See, e.g., United States v. Kahnawake-Mohawk Indus., Inc.*, No. 00-CR-0523 (JS), 2010 WL 3119186, at *2 (E.D.N.Y. Aug. 3, 2010).

---

[3] That petition has not yet been ruled on, and is not being ruled on here.

Indeed, the prospective intervenors do not argue otherwise. Instead, they argue that I may extend the period for filing a petition upon a finding that they "failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B); *see* Razzouk Mot. 2. Specifically, they argue that they "were never notified directly of the forfeiture in the criminal proceeding" and that "[o]nly recently did it come to light that part of the funds turned over to satisfy the forfeiture judgment may have been part of their inheritance." Razzouk Mot. 3.

## A. The prospective intervenors fail to demonstrate excusable neglect.

A district court's determination of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). In making this decision, I take into consideration: "[1] [t]he danger of prejudice to the [opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith." *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 228 (2d Cir. 2004) (alterations in original). These factors "do not carry equal weight; the excuse given for the late filing must have the greatest import." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 n.7 (2d Cir. 2003) (quoting *Graphic Commc'ns Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001)). I consider each factor in turn.

1. The prospective intervenors argue that they would be prejudiced more than the government would because "[t]he forfeiture at issue[] contain[s] funds that may rightfully be [their] property." Razzouk Mot. 3. But they ignore the prejudice that would run to National Union, which argues that allowing the Razzouk daughters to intervene would "delay this proceeding for months" and would "forc[e] [National Union] to further incur additional costs." Schmookler Letter 5. It is National Union, not the government, that stands to gain

the most from a swift resolution to this proceeding. *See* Kedeshian Letter 1 (noting government's expectation that National Union will receive $5,652,661 "upon entry of a final order of forfeiture and after the exhaustion of all appeals"). What is more, as National Union points out, the prospective intervenors "have not provided any factual basis for their alleged interest" in the forfeited funds. Schmookler Letter 5.

2. The prospective intervenors argue that allowing intervention will create "little or no material delay" and will have "little to no effect on the judicial proceedings." Razzouk Mot. 3. They estimate that "a couple of more months to resolve the equitable issues should not be regarded as an [undue] delay." *Id.* Even if that were true, they miss the point. The relevant delay is the five years by which they missed their deadline to petition this court. *See Tancredi*, 378 F.3d at 228. What is more, their intervention now would have a significant effect on this proceeding, coming as it would *after* "National Union and the Government ha[d] reached a settlement in principle" (Schmookler Letter 6).

3. The prospective intervenors argue that they "were unaware that notice of the forfeiture had been published," and that "their delay . . . was based upon the love and trust between a parent and child" and their corresponding "disbelief that their father [would] fail to protect them before anything else." Razzouk Mot. 3. Their burden, however, is not merely to offer a plausible-sounding reason for the delay; it is to show that "the real reason for the delay" was excusable. *Knoll v. Equinox Fitness Clubs*, No. 02 Civ. 9120 (SAS), 2007 WL 1075019, at *2 (S.D.N.Y. Apr. 5, 2007).

The prospective intervenors argue that "they were unaware that their time to petition had started to run" because "they neither saw nor were served with [the] notice." Razzouk Mot. 3. Eventually, of course, they did find out about the notice, but their motion is silent as to when. One is tempted to surmise that this omission was strategic, for if they

5

acknowledged learning of the forfeiture notice more than thirty days before June 29, 2018, when they first contacted this court, their argument would lose all force.

What is more, their counsel argues specifically that "Danielle Razzouk and Monique Razzouk were never notified directly of the forfeiture" and writes, "my clients were unaware that notice of the forfeiture had been published." *Id.* What he does not assert, however, is that he or their other attorneys were similarly unaware. *Cf. Pioneer*, 507 U.S. at 397 (ruling that "proper focus" in excusable-neglect context "is upon whether the neglect of [the party] *and their counsel* was excusable").

And in fact, there is reason to believe that counsel were not unaware. On September 3, 2015, an attorney representing Sassine, Danielle, and Monique Razzouk in a civil action in New York County Supreme Court (*see* Verified Answer & Cross-Claim, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Razzouk*, No. 653191/2012 (N.Y. Sup. Ct. Apr. 29, 2013)) filed as an exhibit this court's docket from the federal criminal case against Sassine Razzouk—a docket that included neighboring entries reading: "Consent Preliminary Order of Forfeiture as to Sassine Razzouk" and "*Affidavit of publication, legal notice was published on an official government website, www.forfeiture.gov beginning on May 8, 2013 and ending on June 6, 2013.*" Exhibit "B" at 5, *Nat'l Union*, No. 653191/2012. And on September 8, 2016, counsel for the prospective intervenors in this proceeding entered an appearance on behalf of all three Razzouks in that same state-court action. *See* Notice of Appearance, *Nat'l Union*, No. 653191/2012. Accordingly, Danielle and Monique Razzouk's counsel should have been well aware of the notice of forfeiture years before they attempted to intervene in this proceeding. Any failure on the part of the Razzouks' counsel to notify them would not constitute excusable neglect. *See Pioneer*, 507 U.S. at 396 ("[C]lients must be held accountable for the acts and omissions of their attorneys.").

The prospective intervenors also assert that when the notice was published, they were "of tender years"—"the ages 23 and 21 respectively." Razzouk Mot. 2. But they offer no support, and I have found none, for the implication that mentally competent adults in their twenties are exempt from generally applicable statutory deadlines. *Cf. United States v. Cerno*, 220 F. App'x 822, 824 (10th Cir. 2007) (observing, in excusable-neglect context, that 21-year-old "is hardly of tender years in the eyes of the federal criminal law").

Last, they write that they "[o]nly recently" began to suspect "that part of the funds turned over to satisfy the forfeiture judgment may have been part of their inheritance." Razzouk Mot. 3.[4] But they fail to explain how recently this was, what evidence aroused their suspicions, and why it took them so many years to come to this conclusion. In short, their explanations for the delay are conclusory, lack factual detail, and are ultimately unconvincing.

4. Finally, all that the prospective intervenors offer in support of their "good faith" is that they requested "permission to petition in the already pending ancillary proceeding, rather than [having] filed a Petition without requesting permission from the Court." Razzouk Mot. 4. Considering that their petition—absent my permission—would be unmistakably time-barred, that is not much of a gesture. For this and the reasons discussed above, the prospective intervenors have failed to demonstrate good faith.

I thus find that the prospective intervenors have not acted with excusable neglect. Any § 853(n) petition that they might bring would be denied as time-barred.

---

[4] Although I do not reach this issue, I note that, to the extent that they are merely claiming an interest in "funds turned over to satisfy the forfeiture judgment" (*id.*)—and not the specific funds in any of the four forfeited financial accounts—the prospective intervenors' claim appears to lack merit. Even if they had timely filed a petition, they would not have been entitled to request a § 853(n) ancillary proceeding based on their father's forfeiture money judgment, "because '[a] money judgment is an *in personam* judgment against the defendant and not an order directed at specific assets in which any third party could have any interest.'" *United States v. Zorrilla-Echevarria*, 671 F.3d 1, 6 (1st Cir. 2011) (quoting Fed. R. Crim. P. 32.2 advisory committee's note to 2000 adoption); *see, e.g., United States v. BNP Paribas S.A.*, No. 14-CR-460 (LGS), 2015 WL 1962882, at *4 (S.D.N.Y. Apr. 30, 2015).

**B.     The motion to intervene is not timely.**

1. As a threshold matter, it is quite unclear whether intervention into a § 853(n) proceeding is allowable. The criminal-forfeiture statute provides that "no party claiming an interest in property subject to forfeiture . . . may . . . intervene in a trial or appeal of a criminal case involving the forfeiture of such property." § 853(k)(1). Thus the prospective intervenors clearly cannot intervene in the underlying criminal action; the ancillary proceeding is "the *only* avenue for a post-indictment third-party claim to forfeited property." *De Almeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006); *see also DSI Assocs. LLC v. United States*, 496 F.3d 175, 183 (2d Cir. 2007) ("It is well established that third parties may not intervene during criminal forfeiture proceedings to assert their interests in the property being forfeited."); *In re Dreier LLP*, 452 B.R. 391, 411 (Bankr. S.D.N.Y. 2011) ("Petitioning the court for an ancillary proceeding is the exclusive means for a third party to claim an interest in forfeited property.").

It is ambiguous whether this ancillary proceeding is a separate, quasi-civil proceeding in which a third party can intervene or is instead part of the criminal case from which intervenors are statutorily barred. On the one hand, there is reason to think that Civil Rule 24 could apply here. The Second Circuit has ruled that "appeals from § 853(n) proceedings are to be governed by [the rule] governing civil appeals, rather than [the rule] governing criminal appeals," in part because "a § 853(n) proceeding 'carries many of the hallmarks of a civil proceeding.'" *United States v. Bradley*, 882 F.3d 390, 393 (2d Cir. 2018) (quoting *United States v. Moser*, 586 F.3d 1089, 1093 (8th Cir. 2009)). And the federal rules make clear that the parties in an ancillary proceeding may "conduct discovery in accordance with the Federal Rules of Civil Procedure" and "may move for summary judgment under Federal Rule of Civil Procedure 56." Fed. R. Crim. P. 32.2(c)(1)(B).

On the other hand, "[b]ecause an ancillary hearing is connected to a criminal case, it would not be appropriate to make the Civil Rules applicable in all respects." Fed. R. Crim. P. 32.2 advisory committee's note to 2000 adoption. And one district court has held, in a dispute over filing fees, that "[t]he ancillary proceeding is not a separate civil proceeding." *United States v. Holovko*, No. WDQ-11-0050, 2014 WL 7151155, at *1 (D. Md. Dec. 15, 2014).

I need not reach this issue. Assuming that the rules permit intervention in the ancillary proceeding—a dubious proposition—I find, for the reasons below, that the motion should be denied as untimely.

2. Rule 24(a) permits intervention by a party with "an interest relating to the property or transaction that is the subject of the action" upon "timely motion." Fed. R. Civ. P. 24(a)(2).[5] "Whether a motion to intervene is timely is determined within the sound discretion of the trial court from all the circumstances." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). In determining timeliness, I consider: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Id.*

These factors largely track those set forth above with respect to excusable neglect. As discussed above, the prospective intervenors or their counsel knew of their interest years before they appeared in this proceeding, and their intervention now would prejudice the

---

[5] If National Union's outstanding petition had already been resolved, the prospective intervenors would have no conceivable interest in the forfeited property. *See* § 853(n)(7) (providing that "the United States shall have clear title to property" either "[f]ollowing the court's disposition of *all* petitions filed" or "if no such petitions are filed" within allotted time (emphasis added)). Based on that statutory language, one court of appeals has declared that "[t]he failure to file a petition within [the] thirty-day time period extinguishes a third-party's interests." *United States v. Marion*, 562 F.3d 1330, 1339 (11th Cir. 2009). It is unclear, however, whether that court had contemplated the unique situation here, where the thirty-day period has passed but no final forfeiture order has issued because the ancillary proceeding, based on a separate third party's timely petition, is ongoing.

9

existing parties, who are on the cusp of settling the matter (*see id.* at 72 ("[J]eopardizing a settlement agreement causes prejudice to the existing parties to a lawsuit.")). Whatever prejudice Danielle and Monique Razzouk might experience (*but see supra* note 4), "the possibility of harm to the late-arriving prospective intervenors" here does not outweigh "the possible harm to parties who have participated diligently during the pertinent portions of this litigation." *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986). Lastly, this case presents no unusual circumstances that militate *for* a finding of timeliness. The motion is denied.

## CONCLUSION

For the foregoing reasons, the motion to intervene is denied, and the government's motion to dismiss is dismissed as moot.

So ordered.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:      September 4, 2018
            Brooklyn, New York